SAFE DEPOSIT AND TRUST CO. ET AL., EXECUTOR OF H. WINTER *vs.* JOHN S. GITTINGS, EXECUTOR OF ANNIE M. WINTER.

*Husband and Wife—Right of Surviving Husband in Personal Property Owned by Wife Under the Act of 1898, ch. 331.*

Under Code, Art. 93, secs. 291 to 306, a wife who survives her husband is entitled to one-third of his personal property absolutely, in case he leaves children; and the husband can not by his will defeat this provision. The Act of 1898, ch. 331, which went into effect on January 1st, 1899, provides that these sections of the Code shall apply to, and be enforced in favor of, surviving husbands so as to give to them the same rights in the estates of their deceased wives which are conferred upon widows in the estates of their deceased husbands. *Held*, that this Act is constitutional, and applies when the wife dies after the passage of the Act, although the parties were married prior thereto, and in such case the surviving husband is entitled to a distributive share of the personal property owned by her.

When under the terms of a contract or settlement the interest on a fund owned by a wife is to be enjoyed by the husband during his life and upon his death is to go to the children of his wife, then upon the death of the wife the surviving husband is not entitled to a distributive share of such fund under the Act of 1898, ch. 331.

The surviving husband is not entitled to a distributive share of an estate held in trust for his wife during her life and after her death in trust for such of her children as she should appoint to take the same, when she did make such appointment.

The right to dispose of property by will may constitutionally be changed by statute.

Appeal from the Orphans' Court of Howard County.

The cause was argued before McSHERRY, C. J., BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER, JONES and BURKE, JJ.

*Arthur W. Machen* and *Arthur W. Machen, Jr.*, for the appellants.

A "surviving husband" under the Act of 1898 by virtue of his survivorship is to be entitled to his "reasonable part" or

"thirds," of his wife's personal estate, in spite of any provision to the contrary in her will. . The section is not retroactive; it does not apply to any case where a husband had survived his wife prior to the Act.   On the other hand, it does clearly apply to all future cases in which a husband survives his wife. Until the death of the wife in the lifetime of her husband, the Act has no operation, but at her death and upon and by virtue of his survivorship, and independently of the date of the marriage, or of any other consideration, the husband's right of succession comes into being. 

The Act does not attempt to abridge in any way the wife's freedom of disposition or alienation.   After the Act, as before, she can sell her property, or she can give it away.   She may squander it if she chooses.   She may settle it by deed upon any trusts or executory limitations allowed by the rule against perpetuities.  The one thing that she cannot do is to deprive her husband of his thirds by *will*—that is, by an instrument ambulatory and inoperative so long as she lives, and to take effect only on her death.   *Kelly* v. *Snow*, 185 Mass. 288.

In other words, to adopt a terse statement of CHIEF JUSTICE TANEY: "The law in question is nothing more than an exercise of the power which every State and sovereignty possesses of regulating the manner and term upon which property, real or personal, may be transmitted by last will and testament, or by inheritance.   *Mager* v. *Grima*, 8 How. 493.

This statute, ch. 331 of the Acts of 1898, which relates to the Article of the Code, entitled "Testamentary Law," must not be confused with ch. 457 of the Acts of the same year, which repeals and re-enacts Art. 45 of the Code, entitled "Husband and Wife," and with which we are only incidentally concerned in this case.

Accordingly, carrying out the manifest intention of the Legislature, this Court, like the inferior Courts of the State, has held that the Act of 1898, ch. 331, governs the distribution of the personal estate of all married women dying after January 1st, 1899, without reference to the date of the marriage, so as to give the husband the same rights in his deceased wife's

personal estate she would have had in his personal estate if she had survived him.  *Grabill* v. *Plummer*, 95 Md. 56.

*Harris* v. *Whiteley*, 98 Md. 430, relied upon by the other side, holds that another statute, namely, the Act of 1898, ch. 457, sec. 7 (the terms of which are widely different from those of ch. 331), does not and could not operate retroactively so as to give a husband *in his wife's lifetime* a vested interest, attachable by his creditors, in *real estate* owned by his wife before the passage of said Act of 1898.  The wife was still living, and the controversy was between her and attaching creditors of her husband.  The case decides nothing as to the devolution of the wife's property on her death, and moreover relates exclusively to real estate, whereas in the case at bar as in *Grabill* v. *Plummer*, only personal property is involved. We most confidently submit that the Whiteley case indicates no disposition to overrule *Grabill* v. *Plummer*, or to shake its authority in any way.

It is claimed that inasmuch as Mrs. Winter, by the Maryland law in force at the time of her marriage, had the power to bequeath her *entire* personal estate, either to her husband or to a stranger, the Act interfered with a "vested right" of testamentary disposition, and is therefore unconsitutional. The vice in this argument is that the right to dispose of property *by will* is not, in the constitutional sense, a "vested right," either of the testator or of the legatee, in the testator's lifetime.  Upon this point, the authorities are conclusive.  "No one is heir, distributee, devisee, or legatee until the person from whom he takes is dead; and the right to make wills is derived from positive law, and nothing is vested under a will until he who makes it dies.  Hence a statute may change the order of inheritance and the law of wills, and the like, as the Legislature pleases; and *rights under laws of this sort are to be determined by the law existing when the death takes place.* Statutes making such changes are *not retrospective*, neither do they to any extent interfere with vested rights.  On this subject there is *no diversity in the authorities.*" 2 *Bishop on Married Women,* sec. 49.

· A recent Missouri case is on all fours with the case at bar. A marriage was contracted in 1875. By the then existing law a married woman could dispose of her property by will to whom she chose, and could deprive her husband of any share therein. In 1895 an Act was passed providing that a surviving husband should have one-half the property of which his wife died seized or possessed, despite any provision in her will. The wife died in 1899, leaving her husband surviving. Held, that he was entitled under the Act of 1895 to one-half of her estate notwithstanding a provision to the contrary in her will. *Spurlock* v. *Burnett*, 183 Mo. 524.

So in a leading Illinois case, a marriage was solemnized in 1826. In 1834, certain property was acquired by the husband, in which, as the law then stood, the wife was entitled to dower, but to no other or greater interest. In 1845 an Act was passed allowing a widow to renounce a provision in her husband's will and take in lieu thereof a certain proportion of the land of which her husband died seized, *in fee*. The husband died in 1854, and the constitutionality of the Act of 1845 as applied to his estate was sustained against the objection of his devisees. *Sturgis* v. *Ewing*, 18 Ill. 176.

Other cases, the same in principle, are: *Henson* v. *Moore*, 104 Ill. 403; *Brettun* v. *Fox*, 100 Mass. 235–236; *Wakefield* v. *Phelps*, 37 N. H. 295. In *Brettun* v. *Fox*, *ubi supra*, JUDGE GRAY said: "The objection of the respondent that the statute could not constitutionally limit the owner's power of testamentary disposition is equally novel and unfounded. The power to dispose of property by will is neither a natural nor a constitutional right, but depends wholly upon statute, and may be conferred, taken away, or limited and regulated, in whole or in part, by legislation."

The distinction, then, is between the right to dispose of property *inter vivos*, by deed or other instrument, and the right or privilege of disposing of property *by will*—that is, by an instrument which is of no effect "so long as the testator liveth," but which becomes operative and irrevocable only on his death.

*Harris* v. *Whiteley*, 98 Md. 430, which has been already refered to, illustrates the same distinction.    There, the creditors of a husband sought to reach the estate in his wife's realty, supposed to be vested in him by sec. 7 of Act of 1898, ch. 457.    The wife was still living; and if the Act operated as the creditors contended, she could not, by alienation *inter vivos*, without the consent of her husband and of his judgment creditors, pass a clear, unincumbered title to the land.    (98 Md. 443–444.)    Hence, if the Act was to be construed in accordance with the creditor's contention, the wife's right to alienate property *in her lifetime*—a vested property right, protected by the Constitution—was taken away, and a certain, present interest in her property was given to another.    The effect of a statute abridging a property owner's freedom of *testamentary* disposition but in no way interfering with alienation *inter vivos* was not before the Court, and was not mentioned or adverted to in the opinion.    *Tiedeman on State and Federal Control of Persons and Property*, sec. 165; *Spreckles* v. *Spreckles*, 116 Cal. 339.

The following are a few out of the many authorities, in addition to those cited above, which hold that the privilege of testamentary disposition may be restricted, or even totally abrogated, without impairing any vested or constitutional right. *Mager* v. *Grima*, 8 How. 490; *Magoun* v. *Illinois, etc., Co.*, 170 U. S. 283: *Patton* v. *Patton*, 39 Ohio St. 590, 597; *Emmert* v. *Hays*, 89 Ill. 11; *Edwards* v. *Pope*, 4 Ill. 455, 469; *Re Little*, 61 Pac. Rep. 899, 900; *Haskins* v. *Crabtree's Admr.*, 44 S. W. 434; 8 *Cyclopedia of Law and Procedure*, p. 891; *Patterson* v. *Gaines*, 6 How. 550, 600 (enforcing a statute which deprived fathers of testatamentary power over four-fifths of their estate.)

In *Patton* v. *Patton, ubi supra*, the Court said: "We concede that the right to acquire property implies the right to dispose of it.    But the inalienable rights here declared, as well as those implied are possessed by living, not by dead men.    A disposition by will does not take effect during the testator's life, but operates only upon his death."    39 *Oh. St.*, 597.

The proposition set up in appellee's answer, filed December 14th, 1903, that by the fact of marriage all the then existing laws of the State relating to the descent or succession of property entered into the marriage contract, so as to make such laws unalterable by the State *quoad* them, has no support in reason or authority. See 19 L. R. A. 256, note and cases cited.

The Legislature possesses power to dissolve the contract of marriage itself, with all its incidents. *Wright* v. *Wright*, 2 Md. 429. *A fortiori* it has power to regulate the transmission of personal property which may be owned by either party at the time of his or her death; as illustrated by the cases going on all fours with the present case, which have been already particularly referred to. *Grabill* v. *Plummer*, 95 Md. 56; *Spurlock* v. *Burnett*, 183 Mo. 524; *Sturgis* v. *Ewing*, 18 Ill. 186; *Henson* v. *Moore*, 104 Ill. 403; *Wakefield* v. *Phelps*, 37 N. H. 295; *Brettun* v. *Fox*, 100 Mass. 234.

This statute by its terms applies wherever a wife dies after January 1st, 1899, leaving a surviving husband. That such was the intention of the Legislature is too clear to admit of dispute; and we have seen that the Constitution does not prevent the execution of that intent. The Act relates both to cases of intestacy and to cases where the wife leaves a will. If Mrs. Winter had died intestate, who would deny that distribution should be made according to the terms of the Act instead of according to the pre-existing law? Yet the manifest intention is that the husband shall have the same rights whether his wife leaves a will or dies intestate.

The terms of this statute are, therefore, widely different from those of sec. 7 of ch. 457, which was construed in the Whitely case. The latter provides "that every husband shall acquire by virtue of his marriage a life estate in one-third of the lands held by his wife;" and clearly was intended to apply to all cases where a marriage takes place after the Act becomes operative, but certainly was not intended to apply retroactively to create a present estate in the husband in his wife's lifetime by virtue of a marriage which had previously taken place. Sec.

4 of ch. 331, on the other hand, provides that "surviving husbands" shall have certain rights in the personal estates of their wives, and applies to all cases where a person becomes a "surviving husband" after the Act became operative—that is, to all cases in which a married woman dies in the lifetime of her husband after January 1st, 1899.   In the one case the right is acquired *by the marriage*, and therefore applies whenever a marriage occurs after 1898; in the other, the right is acquired by the *survivorship*, and therefore applies whenever the survivorship occurs after 1898.   Moreover, apart from the difference in the phraseology of the two statutes, the strongest argument in favor of construing sec. 7 of ch. 457, so as apply only to marriages taking place after 1898, was that a contrary construction would impute to the Legislature an intention to divest vested rights; and this argument has no application to the construction of ch. 331, for we have seen that this statute as applied to the estates of any woman dying after its passage is not retrospective and does not divest vested rights.

Such a construction, which we submit is the *only* possible construction, does not make the Act retrospective.   For we have seen that a statute regulating testamentary powers is not retrospective if applied only to cases where the testator dies after the Act becomes effective.

The rule of law is fixed that any will disposing of personalty must speak as of the date of the testator's death.   Only the law *then* existing can be regarded in considering the question how far the will is capable of operating.   This principle, involved in the ambulatory nature of wills of personalty, is universal; and authorities as to the application of it to a case like, or analogous to, the present, are express.

In deciding *DePeyster* v. *Clendining*, 8 Paige, 295, 304. CHANCELLOR WALWORTH said: "Although this will was made before the revised statutes went into effect, yet as the testator died long afterwards, the validity of the trusts and provisions of the will must depend upon the law as it was when the will took effect."   And see *In the matter of Elcock's will*, 4 McCord (Law), 491; *Houston* v. *Houston*, 3 McCord (Law), 39; *Wakefield* v. *Phelps*, 37 N. H. 295.

The same rule has been applied in cases involving the devise of land, which, of course, are all the stronger on that account. *Bishop* v. *Bishop*, 4 Hill, N. Y. 138; *Blackburn* v. *Tucker*, 72 Miss. 735; *Wray* v. *Waterston*, 12 Met. 262.

The Act gives the surviving husband the same rights in his deceased wife's estate that a widow has in the estate of a deceased husband, whether or not a provision is made in his favor by his wife's will.

The appellee in his answer takes the position that Mr. Winter is not entitled to any part of his wife's personal estate because: "The claims of widows in the case where husbands bequeath their personal estates *wholly* away from them to one-third of the personal estates of their deceased husbands arises and is secured to the widows by the common law and not by said sections (291–306) of Article 93 of the Code."

If this contention were sound, a surviving husband to whom his wife bequeaths any amount, however small—say $5—can renounce the provision and receive a full third of her estate; but if she bequeaths him *nothing*, he must acquiesce. The Legislature could never have intended anything so absurd. That no such intention was entertained; and that the Act should receive no such unreasonable construction, can easily be demonstrated:

(*a*) While the prevalent opinion is that the right of a widow to her thirds where her husband bequeaths his entire estate away from her existed in Maryland at common law, yet the Court of Appeals held in a leading case that *if* the right did not exist at common law, it was conferred by implication by the Acts of 1704, ch. 20, and 1715, ch. 39, of which Code (1888), Art. 93, sec. 291, made applicable to surviving husbands by the Act of 1898, ch. 331, sec. 4, is, with certain immaterial variations, a codification. *Griffith* v. *Griffith's Ex.*, 4 H. & McH. 101. In other words this Court has held that the sections of the Code which are made applicable to surviving husbands by the Act of 1898, ch. 331, *do* confer upon a widow, by implication, a right to her thirds where the will of the deceased spouse leaves the entire estate away from the survivor.

(*b*) Code (1888), Art. 93, sec. 295, which is among the sections made applicable to surviving husbands by the Act of 1898, provides that if nothing shall pass by a devise in favor of the surviving spouse, he or she shall not be barred whether a renunciation be filed or not. *A fortiori*, the widow or surviving husband is not to be barred when the wife of the deceased spouse makes no provision in favor of the survivor.

(*c*) Another and quite conclusive answer is that sec. 4 of the Act of 1898, ch. 457, which is *in pari materia* with ch. 331, and was approved and went into effect on the same day, provides that married women shall have the same power to dispose of their property "by deed, mortgage, lease, *will* or any other instrument that husbands have to dispose of their property, and *no more.*" If there were in ch. 331, standing by itself, any ambiguity as to whether the husband should be entitled to a third where his wife's will leaves him nothing, the ambiguity is removed by sec. 4, ch. 457. Indeed, this seemed to be conceded in the Court below by the learned counsel for the appellee.

*Bernard Carter* and *J. J. Alexander*, for the appellee.

The Acts of 1898, ch. 457, and 1898, ch. 331, are prospective in their operation and not retrospective. It is a general principle repeatedly laid down that retrospective effect is not to be given to a statute unless the Legislature by precise words shows that to be its intention, that a statute is not to be construed retrospectively by inference but only by express enactment, and clear and unambigous words are necessary for this purpose. We insist that the precise point arising on these Acts in this case is covered by the decision of this Court in *Harris* v. *Whiteley*, 98 Md. 430.

The rights of the widows in the estates of their husbands are not then conferred by secs. 291 to 306 of the Code, *i. e.*, the testamentary law, *i. e.*, the Act of 1798, No. 101, but by the common law. If the Act of 1898, ch. 331, sec. 4, had provided that surviving husbands should have the same rights in the estates of their deceased wives as widows had in the

estates of their deceased husbands, the case might have been different, but surely if secs. 291 to 306 of the 93rd Article of the Code do not, and they do not, give to, vest in or confer upon widows right in the estates of their husbands except in the single case of a bequest renounced by the widow, the Act of 1898, ch. 331, sec. 4, cannot be held to give to, vest in, or confer upon surviving husbands a share in the estates of their deceased wives except in the single case of a bequest renounced by the surviving husband. In our case there was no bequest and could be no renunciation.

We offer these suggestions as to the Act in question; but of course this Act is, we submit, dealt with in the same manner as the Act of 1898, ch. 457, by the case of *Harris* v. *Whiteley,* and the expectant interest which Mr. Winter took in his wife's estate under the laws then in force by virtue of his marriage to her cannot be changed into a present absolute estate in one-third of her personalty. We refer also to *Hull* v. *Jacobs,* 4 H. & J. 264; *Maxwell's case,* 40 Md. 273.

BRISCOE, J., delivered the opinion of the Court.

This is an appeal from an order of the Orphans' Court of Howard County passed on the 6th day of March, 1906, and involves a construction of ch. 331 of the Acts of 1898.

On the 19th day of November, 1903, Henry Winter filed a petition in the Orphans' Court of Howard County, as surviving husband of his wife, Annie M. Winter, deceased, claiming one-third part of the personal estate in the hands of the appellee, her executor, for distribution.

Mr. Winter died on the fourth day of January, 1905, and the appellants, his executors, by a subsequent petition filed on the 7th day of February, 1906, claimed therein, one-third of an additional sum of $29,995, collected by the executor since the filing of the original petition.

The facts of the case are substantially as follows: Mr. and Mrs. Winter were married in the month of October, 1869. She died on the 10th of November, 1902, leaving a last will and testament, which was admitted to probate in the Orphans'

Court of Baltimore City, and letters testamentary were granted to the executor named in the will.  She left surviving her, a husband, Henry Winter, a son, John S. Gittings, the executor named in the will, and the appellee here, and a granddaughter, Eleanor A. Moale.

By her will she disposed of a large estate, but made no devise or bequest of either real or personal estate to her husband, Henry Winter.

The personal estate, in the hands of the executor, consists of the following item:

Property and cash shown in inventory returned

| | |
|---|---:|
| 11th of April, 1902 | $52,446 86 |
| Additional inventory returned on 18th March, 1905 | 7,000 00 |
| Cash collected from decree of the Circuit Court for Howard County and interest thereon | 29,995 66 |
| Total | $89,442 12 |

It is contended, upon the part of the appellants, that under ch. 331 of the Acts of 1898, the surviving husband, by virtue of his survivorship, is entitled to one-third of his wife's personal estate, notwithstanding the provisions of her will, to the contrary.

On the part of the appellee, it is claimed, that chapters 331 and 457 of the Acts of 1898 are prospective and not retroactive in their operation, and have no application to this case.

By sec. 7, ch. 457, of the Acts of 1898, it is provided, that every husband shall acquire by virtue of his marriage an estate for his life, in one-third of the land held or owned by his wife, at any time during the marriage, whether by legal or equitable title or whether held by her at the time of her death or not * * * nor shall any conveyance of such lands by the wife alone bar such estate of the husband therein.

This statute was before us in *Harris* v. *Whitely*, 98 Md. 443, in relation to certain real estate, owned by the wife before the passage of the Act, and we there said that the language of the Act would not under the prevailing rules of construction, be held to manifest an intention, on the part of the Legislature to give its provisions such retroactive operation as to disturb or impair existing property rights.

And so in *Slingluff* v. *Hubner*, 101 Md. 652, where the marriage of the party had taken place and the property sought to be affected by dower right in the wife, had been acquired and become vested in the husband who was then living prior to the Act of 1898, it was held that the right of the parties were not affected by the Act of 1898, ch. 457, but must be determined according to the pre-existing law.

We come, then, to the Act of 1898, ch. 331, passed at the same session of the Legislature.  By the 4th section of this Act it is provided, that the following new section be and the same is hereby added to Article 93 of the Code of Public General Laws, to be known as sec. 306A.

By this section it is provided, that the provisions of the preceding secs. 291 to 306, both inclusive, relating to the rights of widows in the estates of their husbands, shall apply to and be enforced in favor of surviving husbands, so as to give to, vest in and confer upon surviving husbands the same rights in the estate of their deceased wives which said secs. 291 to 306, both inclusive give to, vest in, and confer upon widows in the estates of their deceased husbands.

It seems to us that it was the clear intention of the Legislature by this Act, to fix and determine by statute, the interest and estate of the surviving husband in the personal estate of the wife, dying after January 1st, 1899, without regard to the date of the marriage, that is as the express language of the Act states, to give to, vest in and confer upon surviving husbands the same rights in the estates of their deceased wives as they would have in his personal estate, if they had survived him.   As stated by the appellant in his brief, the section is not retroactive, it does not apply to any case where a husband had survived his wife prior to the Act.   Until the death of the wife in the lifetime of her husband, the Act has no operation, but at her death and upon and by virtue of his survivorship, aud independently of the date of the marriage, the husband's rights come into being.

There is nothing in the case of *Harris* v. *Whitely*, or *Slingluff* v. *Hubner*, *supra*, in conflict with this construction of the Act, and those cases have no application here.

It is free from all constitutional objection and carries out the obvious intention of the Legislature in its passage.

Applying, then, this construction in the case at bar, the questions as to the rights of the surviving husband in his wife's personal property, are free from difficulty.

It is clear that the twenty-nine thousand dollars recovered in the case of *Gittings* v. *Winter*, in the Circuit Court of Howard County, is no part of Mrs. Winter's estate. The fund at the death of Mr. Winter was to go the heirs of the wife, the children of Mrs. Winter. This was established by the decree in that case. *Winter* v. *Gittings*, 101 Md. 194; *Schroeder* v. *Loeber*, 75 Md. 195.

The estate which Mrs. Winter received under her father's will, was in trust for her sole and separate use for her life and after her death in trust for such of her children as she should limit and appoint to take the same. This power of appointment was exercised by her will of September 30th, 1898, so the property derived from the trust estate, is also free from the husband's claim.

As Mrs. Winter died on the 10th of November, 1902, after the Act of 1898, ch. 331, took effect, the personal property whereof she died seized and possessed in her own right will be liable to the claim of the surviving husband, under the Act. *Grabill* v. *Plummer*, 95 Md. 56.

Mr. Bishop in his work on Married Women, sec. 49, says: Rights under laws of this sort are to be determined by the law existing when the death takes place. Statutes making such changes are not retrospective, neither do they to any extent divest vested rights.

For these reasons, the order of the Orphans' Court of Howard County, dated the 6th of March, 1906, dismissing the petitions filed in this case, will be reversed and the case remanded, for further proceedings, in accordance with this opinion.

> *Order reversed and cause remanded with costs.*

(Decided June 14th, 1906.)