CARRIE V. S. BULLEN *v.* SAFE DEPOSIT & TRUST COMPANY, EXECUTOR AND TRUSTEE, ET AL.

[No. 40, October Term, 1939.]

272

*Decided November 29th, 1939.*

The cause was argued before BOND, C. J., OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, JOHNSON, and DELAPLAINE, JJ.

*Charles Markell,* for the appellant.

*Charles McHenry Howard* and *George M. White,* with whom was *Charles G. Page,* on the brief, for the appellees.

SHEHAN, J., delivered the opinion of the Court.

This is an appeal from a decree sustaining the demurrers of the Safe Deposit and Trust Company, trustee and executor, and others, to the bill of complaint of Carrie V. S. Bullen, widow of George R. Bullen, and dismissing the bill. The purpose of the suit was to assert her alleged rights in the proceeds of certain life insurance of her husband with respect to which he had created a trust in the Safe Deposit and Trust Company of Baltimore, for certain uses and purposes therein declared. This trust company is also the executor named in his will. George R. Bullen died December 1st, 1937, leaving a will dated January 23rd, 1933. The executor filed inventories of the real and personal estate of the deceased, aggregating $226,000, but did not include in these inventories any life insurance although there were twenty-one policies of insurance on his life, aggregating $146,000. Sixteen of these policies were made payable to the said Safe Deposit and Trust Company of Baltimore City, trustee, under the declaration of trust. The remaining five policies were payable to other beneficiaries. All of the twenty-one policies were subject to the right of change, as to beneficiaries, by Mr. Bullen. The original declaration of trust, and the amended declaration, provided that during Mr. Bullen's life the trustee should have no duties to perform, and was merely custodian of the policies, if and when delivered to it, Mr. Bullen retaining in himself the right to revoke, or change, the declaration of trust.

In 1904 Mr. and Mrs. Bullen were married and they lived together until his death. They had no children, but at the time of their marriage Mrs. Bullen was a widow with one child, now Henrietta Stevens Mills. Mr. Bullen was a widower with one child, now Irene Elizabeth Lechthaler. During the married life of these people all of these insurance policies, with the exception of one, were acquired by him. Until March, 1926, when he made his declaration of trust, he had acquired nineteen policies aggregating $177,313, and the ultimate beneficiaries were his wife, as to $15,000; his daughter $132,313; his sister

$5000; and his estate $25,000. Later there were two additional policies, which brought the total up to $197, 313.00. Seven of these policies, aggregating $105,000, were converted into paid-up insurance aggregating $54, 105. This reduced the total of insurance to $146,418 and reduced the total amount of insurance in the name of the trustee from $157,313 to $106,418. Numerous changes were made in the policies with respect to beneficiaries, assignments, and amounts, under the authority retained by him in the instruments creating the trust. Loans were made on the policies and were paid. In fact he exercised full control.

On January 23rd, 1933, Mr. Bullen took two decisive steps with respect to his property, and his insurance policies, for on that day he executed an amended declaration of trust and also made his last will. In his will there were provisions, conditioned upon the acceptance of the will by the plaintiff, for payment to the plaintiff of three-fourths of the income of his estate, or all of it, if his daughter and her issue, if any, should first die, but no part of the corpus, but with certain stipulations with respect to payments to his daughter and grandchild, if living. Mr. Bullen later on, under the authority reserved by him with respect to the trust, made a complete restatement of the terms and provisions of the trust and provided that, in the event the plaintiff should accept the will, she should receive one-half the income, or all of it if Mr. Bullen's daughter, or her issue, if any, should first die, but no part of the corpus, with certain other provisions, and then further provided that in the event of his wife renouncing the will she and her descendants would get nothing at all, neither corpus or income.

The gravamen of the bill of complaint is contained in paragraph eleven, which is as follows: "Both (1) under the twenty-one life insurance policies * * * through the reserved right to change beneficiaries and other reserved rights, together with possession of the policies, and (2) under the Declaration of Trust dated March 12, 1926, and the amendatory Declaration of Trust dated January

23, 1933 * * * through the reserved powers of revocation and amendment, George R. Bullen at all times up to the moment of his death had all the actual dominion and control over this life insurance which any form of complete ownership would give. In the course of years he repeatedly exercised his dominion over his life insurance, by making frequent changes of beneficiary and converting some of the policies into paid-up insurance in reduced amounts * * * and by making one complete change * * * in his declaration of trust. At one time or another all but three of these twenty-one policies were formally made payable to his estate. Over this $146,000.00 of life insurance George R. Bullen possessed and exercised as complete dominion and control as he possessed or exercised over the $226,000.00 of other real and personal estate included in the inventories filed in the Orphans' Court of Baltimore City by Safe Deposit and Trust Company of Baltimore, executor of his will. * * * on the face of the twenty-one life insurance policies, the declaration of trust dated March 12, 1926, the will of the same date, the amendatory declaration of trust dated January 23, 1933, and the will of that date, the purpose and the necessary effect of the declaration of trust (if legally effective as against your oratrix), the will and the life insurance policies was and is to defeat your oratrix' marital rights in her husband's estate without relinquishment by George R. Bullen of dominion and control throughout his life over the life insurance from time to time subject to the declaration of trust, and thereby to effect a fraud upon your oratrix' marital rights."

On December 15th, 1937, Mr. Bullen's will was probated and on March 19th, 1938, the plaintiff, in writing, renounced the will and elected to take her one-third. The bill of complaint was filed on October 7th, 1938, by Carrie V. S. Bullen, the widow, against the Safe Deposit and Trust Company of Baltimore, as executor of the will of George R. Bullen, and also against this Company as trustee under the declaration of trust, and against all present or contingent beneficiaries under the declaration

of trust, and the beneficiaries named under five of the twenty-one policies above mentioned.

The amended bill of complaint prays (1) a decree that the plaintiff is entitled to receive, as part of her legal share of her deceased husband's estate, one-third of the proceeds (principal and interest) of the sixteen life insurance policies collected by Safe Deposit and Trust Company of Baltimore, trustee, and the other five policies, collected, or to be collected, by the respective beneficiaries; (2) an accounting by Safe Deposit and Trust Company of Baltimore, trustee, and the beneficiaries named under the other five policies, with the plaintiff for her share of the proceeds (principal and interest) of the twenty-one policies, and payment to the plaintiff of her share of the proceeds, with due allowance for the payments already received by the plaintiff under two of the policies; and (3) general relief.

Demurrers were filed to the bill of complaint, which were sustained, and the bill was dismissed. From the decree sustaining the demurrer and dismissing the bill, this appeal is taken.

It is urged on the part of the appellant that, in spite of the creation of the trust, she has, under the circumstances above recounted, an interest in the proceeds of these policies, to the extent of one-third of the amount collected by the trustee, and also collected by the other beneficiaries, and to establish that right, and for an accounting, are the main purposes of this suit. And, as a second contention, it is urged that the whole scheme was for the purpose of defrauding or cheating the wife out of her statutory claim in her husband's estate. It should be observed that the amended bill of complaint does not specifically charge a fraudulent intent, nor are the facts and circumstances alleged sufficient to justify an inference of fraudulent design or practices, with respect to the interest of the wife in her husband's estate.

It would seem that the consideration of this case divides itself into two parts. The first is the question as to what, if any, interest the appellant has in the proceeds of these

insurance policies, and this immediately leads to the question as to whether or not the benefits of the insurance were a part of the personal estate of the testator at the time of his death, such as would entitle her under the statute to her one-third interest. Article 93, section 311, of the Code. It seems that the proper test to this question is whether or not the executor could sue to recover on the ground that the proceeds of these policies belonged to the estate, and, unless these benefits under the policies would be subject to distribution under the law, or in pursuance of the terms of the will, there could be no such recovery. If this disposition cannot be made of the proceeds of the policies, then the executor would not have the right of recovery, nor would a beneficiary have any rights under the statute against these funds. *Whitehill v. Thiess,* 161 Md. 657, 158 A. 347; *Sturgis v. Citizens' National Bank,* 152 Md. 654, 137 A. 378.

There can be no doubt that a beneficiary in a life insurance policy has no such interest in it, or control over it, as entitles her to say what shall be done with it, or control the change in beneficiaries, or other dealings, during the lifetime of the holder of the policy. It is only after the death of the holder that such interests or rights attach to the proceeds. All these principles are entirely recognized, if not established, in *Sturgis v. Citizens' National Bank,* 152 Md. 654, 137 A. 378. These principles find support in the cases of *Fairfax v. Savings Bank of Baltimore,* 175 Md. 136, 199 A. 872; and *Milholland v. Whalen,* 89 Md. 212, 43 A. 43.

The appellant contends that, because of the retention by Mr. Bullen of absolute dominion and control over the disposition of the policies, this vested in him an interest which, after his death, would repose in his widow an interest in the proceeds in the hands of the trustee. It is true that he did reserve, in the instrument creating the trust, these absolute rights in the following broad language, "The above-named Settlor, reserves the right at any time, by instrument in writing, duly signed by him and lodged with said Trustee, to add to, modify,

alter, amend, revoke or otherwise change or limit the provisions of this trust in so far as they may affect or apply to the entire trust estate or any part thereof." This is with the further right, during the lifetime of the settlor, to terminate any or all of the policies held by the trustee and to avail himself of all other rights and privileges under said policies. By these reservations Mr. Bullen had no other or additional authority that he did not possess before he created the trust. These are all powers ordinarily incident to policies of life insurance, and such provisions or reservations do not confer upon the wife or widow any other or additional rights, privileges, or estate, that were not hers before the trust was created. It would seem that *Sturgis v. Citizens' National Bank, supra,* fully answers any contention of the wife or widow that she has a claim or interest in the proceeds of policies solely because her husband retained power and control over them. The determination of this case, or at least of this matter under consideration, turns on the simple proposition that a widow is entitled to no part of her husband's estate except that of which he died seised or possessed, but when such is established she may not be deprived of it except through her consent. The proceeds of life insurance policies have never been regarded as a part of the personal estate of the deceased, unless payable to the estate.

A second proposition turns upon the question whether or not Mr. Bullen's acquisition of these policies, his retention of complete control over them, the placing them in trust, the making of his will, with the provision against her renouncing it, constitute a course of action evidencing an intention to defraud her. This court, in dealing with questions of this character, has said in *Brown v. Fidelity Trust Co.*, 126 Md. 175, 94 A. 523, 526, "But if the conveyance or transfer be a mere device or contrivance by which the husband, not parting with the absolute dominion over the property during life, seeks at his death to deny his widow that share of his personal estate which the law would assign to her * * * it will be ineffectual

against her." The proceeds of these policies never became a part of the personal estate of Mr. Bullen and it is evident that it was his intention that they should not become part of his estate, and if not a part of his estate then the widow was entitled to no share of it. See also *Feigley v. Feigley*, 7 Md. 537.

Nor can this doctrine be carried so far as to impose a restriction upon the husband in the free and unlimited power to dispose of his property at will, even though the exercise of this right would cause him to deprive himself of the means of supporting and maintaining his wife, providing he does so in good faith. The latitude he has with regard to the disposition of property, with respect to his wife, is not gauged by the same standards as that pertaining to his creditors. The subject is discussed in *Feigley v. Feigley, supra.* His intent is the essence of the action, and for discussion of the mater we again refer to the case of *Sturgis v. Citizens' Nat. Bank, supra.*. See also the case of *Jaworski v. Wisniewski*, 149 Md. 109, 131 A. 40; and for further illustration see *Whitehill v. Thiess*, 161 Md. 657, 158 A. 347; *Brown v. Fidelity Trust Co., supra.*

It is conceded that there is no case in Maryland dealing with the right of a wife to complain that insurance policies are alleged to have been obtained in fraud of her marital rights. The problem in that respect is much involved, because the death benefits are not, and never were, owned by the insured, and never became a part of his estate. The benefits were as usual deferred until the death of the insured and payable to those designated as beneficiaries. There are cases in other states that deal with this subject. *Bose v. Meury*, 112 N. J. Eq. 62, 163 A. 276, and cases there cited; *Sigal v. Hartford Nat. Bank & Trust Co.*, 119 Conn. 570, 177 A. 742; *Gurnett v. Mutual Life Ins. Co. of New York*, 356 Ill. 612, 191 N. E. 250.

In conclusion, it is our opinion that the wife has not a statutory interest in her husband's life insurance merely by reason of his retaining the right to change the benefi-

ciary, and the right to exercise complete dominion and control over it, and that under the circumstances in this case the facts are not such as to warrant an inference of fraud, that would entitle her to a distributive share in the proceeds of the policies, nor do we think it can be successfully contended that George R. Bullen so dealt with his property as to defraud his widow. In fact, the contrary appears in the record. When they were married she was possessed of a comparatively small amount of property, about $20,000. During their married life, and at the time of his death, property approximating $150,000 was given to her, or acquired by operation of the law. His whole conduct is not in keeping with fraudulent intent, or design, against her property rights, but on the contrary a solicitude for the happiness of his widow, and her daughter, is shown. The conclusion of this court is that the decree should be affirmed.

*Decree affirmed, with costs.*